IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ROBERT CHERKAS, | CIVIL ACTION |
| --- | --- |
| Plaintiff, | |
| v. | |
| P/O SYLVESTER WHITE AND P/O JAMES TOKINSON, | NO. 17-4498 |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiff Robert Cherkas was arrested for allegedly driving while intoxicated. After the Commonwealth of Pennsylvania withdrew its criminal charges, Plaintiff initiated this lawsuit against Police Officers Sylvester White and James Tokinson. Plaintiff sued Defendants for false arrest under the Fourth Amendment (Count I), "improper search and seizure" under the Fourth Amendment (Count II), assault (Count III), battery (Count IV), intentional infliction of emotional distress (Count V), malicious prosecution (Count VI), and false imprisonment (Count VII). Defendants now move for summary judgment, which shall be granted in part and denied in part.

I. FACTS

Plaintiff was arrested after he illegally parked his car. Plaintiff, driving on a two-way street, pulled across the oncoming lane of traffic and into a parallel parking spot facing the opposite direction. He parked his car at an angle over the sidewalk, though the parties dispute whether both or only one front tire was on the sidewalk. Plaintiff then left his car to buy a jacket from a street vendor. He returned and entered his car. Officer White then approached him.

Officer White asked Plaintiff to place his vehicle in park. He noted that Plaintiff's eyes were bloodshot (though the parties dispute the degree to which they were bloodshot), and he told Plaintiff that he believed that Plaintiff was "stoned on something" or drunk. Plaintiff talked to

Officer White loudly, though Plaintiff claims he raised his voice only after he was accused by Officer White of being intoxicated. Officer White, on the other hand, claims that Plaintiff was loud before he made that accusation. Plaintiff also told Officer White that he was a TV and YouTube celebrity. Plaintiff recalled having not slept for a while and that he may have told Officer White that he had not slept.

After Plaintiff's arrest, he was taken to the police station, spending approximately 24 to 48 hours there.[1] A nurse drew his blood for testing. After his tests came back negative for any substances, the Commonwealth dropped its criminal charges against him.

## II. LEGAL STANDARD

Summary judgment must be granted to a moving party if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). Material facts are determined by reference to the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute "exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See U.S. ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89, 93 (3d Cir. 2018). The non-moving party must show where in the record evidence a genuine dispute exists and not merely deny the moving party's pleadings. *See id*. Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).

---

[1] Plaintiff claims that he was placed into a police car and handcuffed and that the handcuffs were so tight that they caused him pain.

## III. ANALYSIS

### A. False Arrest, False Imprisonment & Malicious Prosecution Claims

Plaintiff's Section 1983 claims for false arrest, false imprisonment, and malicious prosecution are addressed together, as each claim requires him to establish the absence of probable cause. *See James v. City of Wilkes-Barre*, 700 F.3d 675, 680, 682-83 (3d Cir. 2012) (false arrest); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (false imprisonment); *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc) (malicious prosecution).[2] Plaintiff's state law claims for false arrest, malicious prosecution, and false imprisonment, similarly require a showing of probable cause. *See Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. 2010) (false arrest and false imprisonment); *Kelley v. Gen. Teamsters, Chauffeurs, & Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988) (malicious prosecution). The probable cause analysis for the state-law claims is the same as that for the federal claims. *See Russoli v. Salisbury Twp.*, 126 F. Supp.2d 821, 869 (E.D. Pa. 2000) ("Pennsylvania state law false arrest claims and federal constitutional false arrest claims are co-extensive both as to the elements of proof and elements of damages."). Thus, the probable cause inquiry as to Plaintiff's false arrest, false imprisonment, and malicious prosecution claims – whether styled as state or federal – will be identical.

The question of whether there is probable cause is answered by reviewing the "totality of the circumstances." *See District of Columbia v. Wesby*, 138 S.Ct. 577, 586 (2018). The analysis

---

[2] The brief detention of Plaintiff subsequent to his arrest follows from "the need to take the administrative steps incident to arrest." *See Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). So, Plaintiff's claim of "false imprisonment" subsequent to his arrest is subject to the same analysis as his arrest. *See id.* at 120 (for pretrial detention, "the standard is the same as that for arrest."); *see also Wallace v. Kato*, 549 U.S. 384, 388-89 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter"); *Manuel v. City of Joliet*, 137 S. Ct. 911, 918 (2017) ("The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause [which] can happen when the police hold someone without any reason before the formal onset of a criminal proceeding.").

turns on evaluating "the events leading up to the arrest" and then deciding "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Id.* (internal citations omitted).

Here, the officer was confronted with an illegally parked vehicle that had pulled across oncoming traffic to fit into a space at an angle, facing the wrong way. The car's front tire was (or both were) on the sidewalk. Upon confronting the driver of the car when he returned from purchasing a jacket the officer noted that the driver's eyes were watery and bloodshot. Officer White also stated to the driver that he appeared "stoned" or drunk. Plaintiff raised his voice during the conversation and claimed to be an internet and television celebrity. A reasonable police officer could infer from these circumstances that Plaintiff had been driving while intoxicated or under the influence of other substances.

Plaintiff fails to create a genuine dispute as to any of these material facts. Plaintiff takes issue with the degree to which the car was parked on the sidewalk, suggesting that only one tire was on the sidewalk. But given that the car was parked facing oncoming traffic, at an angle in a parallel parking spot, and undisputedly on the sidewalk, the degree to which the tires were on the sidewalk is immaterial. And while Plaintiff adds that the degree to which his eyes were bloodshot is debatable, he does not dispute that his eyes were bloodshot. Similarly, Plaintiff claims he only became loud after he was told that he might be drunk or high, but that does not negate Officer White's observation that his was loud.[3]

Because facts material to the issue of probable cause are ultimately not in dispute, summary judgment in favor of Defendants is appropriate as to Plaintiff's federal and state-law claims predicated upon his arrest, detention, and prosecution. *See Montgomery v. De Simone*,

---

[3] Plaintiff's briefing also seems to suggest that he was loud after Officer White began "mocking" him. Again, as noted, this does not negate Officer White's observations suggesting Plaintiff was intoxicated.

159 F.3d 120, 124 (3d Cir. 1998) (according to the Third Circuit, "the question of probable cause in a section 1983 damage suit is one for the jury," but summary judgment is appropriate where "a reasonable jury could not find a lack of probable cause for Montgomery's stop and arrest."); *Kelley v. Gen. Teamsters, Chauffeurs, & Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988) (in Pennsylvania, "Usually, the existence of probable cause is a question of law for the court rather than a jury question, but may be submitted to the jury when facts material to the issue of probable cause are in controversy.").[4]

### B. Search and Seizure

Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment search claims because Plaintiff consented to the search at issue. While a blood draw is a "search" under Fourth Amendment jurisprudence, it is legal when proper, voluntary consent is given. *See Birchfield v. North Dakota*, 136 S.Ct. 2160, 2173 & 2187 (2016). Here, Defendants annexed to their supplemental brief the forms signed by the Plaintiff showing his consent to the search. Accordingly, summary judgment shall be granted on Plaintiff's improper search claims.

### C. Assault & Battery

Plaintiff's assault and battery claim fails for the same reason his search claim fails. According to Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *See Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). A battery does not occur, however, if there is consent. *See Cooper ex rel. Cooper v. Lankenau Hosp.*, 51 A.3d 183, 191 (Pa. 2012). Here, Plaintiff's

---

[4] "[The] conclusion that the officers had probable cause to arrest [Plaintiff] is sufficient to resolve this case." *Wesby*, 138 S. Ct. at 589. Nevertheless, even if no probable cause existed, Defendants are entitled to qualified immunity because they might have "reasonably but mistakenly" believed that probable cause existed for Plaintiff's arrest, detention, and prosecution. *See id*. at 591.

express consent forms show that he consented to the blood draw, and Plaintiff does not point to evidence that would create a genuine dispute about his consent. Thus, summary judgment shall be granted on Plaintiff's assault and battery claim.

### D. Intentional Infliction of Emotional Distress

Defendants contend that Plaintiff's claim for intentional infliction of emotional distress fails as a matter of law because he presents no expert evidence or medical proof of injury. *See Tuman v. Genesis Assocs.*, 935 F. Supp. 1375, 1393 (E.D. Pa. 1996) (granting summary judgment for emotional distress claim because plaintiffs did not offer "expert medical confirmation that they actually suffered the claimed distress") (citing *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987)). Plaintiff's opposition to Defendants' motion does not address his intentional infliction of emotional distress claim. Thus, summary judgment shall be granted. *See Sang Geoul Lee v. Won Il Park, MD*, --- F. App'x ---, 2017 WL 6508840 at *2 ("[I]t is the responsibility of neither the District Court nor this Court to make the parties' arguments for them; therefore, we will not engage in a freewheeling investigation into . . . state law without meaningful briefing on the subject.").

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**April 13, 2018**                                                              **WENDY BEETLESTONE, J.**

6